**In re IML FREIGHT, INC., a Utah corporation, Debtor.**

**In re IML PROPERTIES, INC., a Utah corporation, Debtor.**

**In re INTERSTATE RENTAL OF UTAH, INC., a Utah corporation, Debtor.**

**Bankruptcy Nos. 83C–01950 to 83C–01952.**

United States Bankruptcy Court, D. Utah.

March 7, 1984.

Michael T. McCoy of Warnock & Hurd, Salt Lake City, Utah, for Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Teamsters Nat. Freight Industry Negotiating Committee, and the Intern. Ass'n of Machinists.

James G. Walsh, Jr., of Jolley, Moran, Walsh, Hager & Gordon, Kansas City, Mo., for Central States, Southeast and Southwest Areas Health and Welfare Fund and Central States Southeast and Southwest Areas Pension Fund.

William S. Richards and Russell C. Fericks, of Richards, Brandt, Miller & Nelson, Salt Lake City, Utah, for trustee, Allan D. Musgrove.

Michael R. Murphy and Suzanne West, of Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, for First Nat. Bank of Boston.

### MEMORANDUM OPINION

GLEN E. CLARK, Bankruptcy Judge.

On February 13, 1984, the court heard the Trustee's motion for an order approving the Trustee's rejection of certain collective bargaining agreements which he alleged con-

---

stitute executory contracts under Section 365 of the Bankruptcy Code.

Filing briefs only were Michael T. McCoy of Warnock & Hurd, co-counsel for the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Teamsters National Freight Industry Negotiating Committee, and the International Association of Machinists (hereinafter collectively referred to as the "Unions"); James G. Walsh, Jr. of Jolley, Moran, Walsh, Hager & Gordon, co-counsel for Central States, Southeast and Southwest Areas Health and Welfare Fund and Central States Southeast and Southwest Areas Pension Fund (hereinafter collectively referred to as "Central States"); William S. Richards and Russell C. Fericks of Richards, Brandt, Miller and Nelson, co-counsel for the Trustee, Allan D. Musgrove (hereinafter "Trustee"); Michael R. Murphy and Suzanne West of Jones, Waldo, Holbrook & McDonough, counsel for First National Bank of Boston.

Appearing for oral argument only was John B. Maycock of Hansen, Jones, Maycock & Leta, counsel for Western Conference of Teamsters Pension Trust Fund and Western Conference of Teamsters Health and Welfare Trust Fund (hereinafter collectively referred to as "Western States").

Appearing for oral argument and also filing briefs were Robert D. Merrill of Van Cott, Bagley, Cornwall and McCarthy, co-counsel for the Trustee; Frederick Perillo of Goldberg, Previant, Uelman, Gratz, Miller and Brueggeman, S.C., co-counsel for the Unions; Ralph R. Mabey of LeBoeuf, Lamb, Leiby & MacRae, counsel for the Unsecured Creditors' Committee; and James C. Swindler of Rooker, Larsen, Kimball & Parr, co-counsel for Central States.

## FACTS

On July 15, 1983, debtor, IML Freight, Inc., filed a petition under Chapter 11 of the Bankruptcy Code. On the same day, debtor filed a motion seeking approval of its rejection of certain pre-petition executory contracts (collective bargaining agreements) between the debtor and the Unions.

On August 11, 1983, this court approved the rejection of those labor agreements. On October 15, 1983, a trustee, Allan D. Musgrove, replaced the debtor-in-possession. On November 11, 1983, the Trustee, acting on behalf of the bankruptcy estate agreed to new collective bargaining agreements subject to court approval. On December 10, 1983, after a hearing, the court entered an order stating that the Trustee, in entering into these post-petition agreements, would be acting within his discretion. These post-petition agreements contained terms similar to those contained in the rejected agreements.

On February 2, 1984, the Trustee filed a motion seeking the court's approval of his rejection of the December 10 post-petition collective bargaining agreements.

## ARGUMENT

The Trustee takes two positions in support of his motion. First, he argues that the post-petition agreements with the Unions should be declared void *ab initio* because either (1) they were only "agreements to agree," or (2) they lacked the element of a meeting of the minds between the parties thereto, or (3) they were predicated upon a mutual mistake of material fact, or (4) they were entered into by the Trustee as a result of fraudulent inducement on the part of the Unions.

Second, the Trustee argues that the post-petition labor agreements contemplated a "reactivation" or "re-implementation" of the pre-petition contracts. He bases this characterization on two facts: (1) the terms of the pre- and post-petition agreements are similar, and (2) the purpose of the post-petition contracts was to "provide a framework for further negotiations on other terms." The Trustee states that these "further negotiations" proved futile and that the post-petition labor agreements must now also be rejected.

Opponents of the Trustee's motion argue that the post-petition agreements were not a "reactivation" or "re-implementation" of the rejected agreements, but were, instead,

entirely new contracts in consideration for which the Unions "permitted the Trustee to operate the company at 23% below the prevailing industry rate." Therefore, the Unions argue, these post-petition agreements do not come under Section 365 of the Code because they are contracts of the Trustee on behalf of the bankruptcy estate and not contracts of the debtor.

## DECISION

■ The court observes that counsels' briefs were filed and their arguments heard prior to February 22, 1984 when the United States Supreme Court handed down its opinion in the case of *National Labor Relations Board v. Bildisco & Bildisco, Debtor-In-Possession, et al.,* —— U.S. ——, 104 S.Ct. 1188, 79 L.Ed.2d 482. In that decision the Court held that a collective bargaining agreement extant at filing is an executory contract of the debtor which is subject to Section 365 of the Code and which on motion may be rejected if the debtor demonstrates that the agreement hinders the reorganization and if the bankruptcy court finds that after "careful scrutiny" certain equities, as set forth in the opinion, balance in favor of rejection. The Supreme Court did not address the question raised in the instant case: whether a collective bargaining agreement entered into post-petition by the trustee, on behalf of the bankruptcy estate, is an executory contract of the debtor within the meaning of Section 365.

In arguing the Trustee relies upon three cases: *In re Sombrero Reef Club, Inc.,* 18 B.R. 612 (Bkrtcy.S.D.Fla.1982); *In re Chugiak Boat Works, Inc.,* 18 B.R. 292 (Bkrtcy.D. Alaska 1982); and *In re Reserve Roofing,* 21 B.R. 96 (Bkrtcy.M.D.Fla.1982).

The Trustee's reliance on *Sombrero Reef* is misplaced. That case dealt with executory contracts, extant at filing, that were first assumed and later rejected by the debtor-in-possession. The court held only that "a prior assumption will not prevent a subsequent rejection." *Id.* at 615. That holding is irrelevant here where it is clear on the face of the agreements themselves that no assumption of pre-petition contracts ever occurred.

The Trustee's reliance on *Chugiak Boat Works* is also misplaced. There the debtor-in-possession, during the period of reorganization, contracted with Silver King River Runners to build a boat and accepted a $4,150.00 deposit. When the case was converted to one under Chapter 7, the debtor failed to perform its obligations to Silver King. The question before the court was "whether an executory contract reasonably entered into in the course of a Chapter 11 reorganization but rejected [or breached] after conversion to Chapter 7 constitutes an administrative expense." *Id.* at 294. The *Chugiak* court held that Silver King's claim was an administrative expense, but it did not determine whether an executory contract entered into during a Chapter 11 proceeding was a contract of the debtor requiring for rejection or assumption the approval of the court under Section 365.

In the *Reserve Roofing* case, the court approved the debtor-in-possession's rejection of two collective bargaining agreements. Both these agreements were pre-petition contracts, extant at filing, and renewed during the reorganization. The facts surrounding the renewal were not clear to the *Reserve Roofing* court. In fact, that court stated "[t]here was no evidence as to what alterations, if any, in contract terms were made between the parties upon renewal, or as to whether renewal was automatic or by mutual agreement." *Id.* at 97. The court, however, concluded that it had "power to authorize rejection of an executory contract of the Debtor regardless of whether *entered into* or renewed following filing of the Chapter 11 petition." *Id.* at 100.

The conclusion of the *Reserve Roofing* court that contracts "entered into" post-petition fall within the ambit of Section 365 of the Code is dictum. In any case, this court cannot agree with that portion of the opinion for the following reasons.

First, such an interpretation contradicts the unambiguous language of Section 365 which requires the trustee or debtor-in-pos-

session to obtain court approval to "assume or reject any executory contract or unexpired lease of the debtor." This section clearly applies only to "executory contracts ... *of the debtor* "; it does not apply to post-petition contracts negotiated by a trustee or a debtor-in-possession on behalf of the bankruptcy estate.

Second, if Section 365 were applied to post-petition agreements, court approval would be required every time the trustee or debtor-in-possession sought to make or break such a contract. Such decisions fall within the trustee's or debtor-in-possession's discretion to make decisions in the ordinary course of business. The intrusion of the court into such decisions is a time-consuming waste of resources both of the estate and of the court system. It was for this reason that this court, in issuing its order on Trustee's motion seeking court approval of these very post-petition collective bargaining agreements, confined itself to a determination that such action was within the Trustee's discretion. Bargaining, and collective bargaining too, involve arm's-length negotiations between private parties who act upon a vast array of imponderable facts and motivations. The delicate mechanism of negotiations leading to post-petition contracts should not be influenced by the expectation of court approval or disapproval under Section 365.

Third, the overall result of applying Section 365 to post-petition contracts would be to discourage creditors and others from dealing with Chapter 11 trustees. For if Section 365(a) were to apply to such contracts, so may Section 365(g), requiring that damages arising from a trustee's breach of a post-petition agreement be treated as a pre-petition claim rather than as an administrative expense. Creditors will be more likely to extend credit to a rehabilitating debtor if their post-petition agreements will, in the event of a breach, be accorded administrative expense priority under Section 503(b) rather than pre-petition priority under Section 365(g).

For these reasons, the court concludes that court approval under Section 365 does not apply to post-petition contracts entered into by a trustee on behalf of the bankruptcy estate.

At the hearing the Trustee argued that his December 10, 1983 post-petition collective agreements with the Unions were not new contracts at all, but constituted some kind of extension, "reactivation" or "re-implementation" of the pre-petition agreements. The court rejects this argument for the following reasons. The pre-petition agreements between the debtor and the Unions were rejected by the debtor-in-possession with court approval. These agreements were never again assumed, renewed, "reactivated" or "re-implemented." After the Trustee replaced the debtor-in-possession, he negotiated with the Unions completely new labor contracts involving new parties, a new offer, new terms, new consideration, new dates, and a new acceptance.

The post-petition agreements entered into between the Trustee for the estate and the Unions were not executory contracts of the debtor and therefore are not subject to Section 365 of the Code. In light of this ruling and because there is no proper motion before the court, it will not be necessary at this time to address Trustee's first argument and determine whether or not these post-petition collective bargaining agreements are void *ab initio*.

## CONCLUSIONS

Section 365 of the Code, which allows, subject to court approval, a debtor-in-possession or a trustee to "assume or reject any executory contract or unexpired lease of the debtor" does not apply to an executory contract which was (1) formed after the filing of the petition in bankruptcy and (2) entered into by the trustee or debtor-in-possession on behalf of the bankruptcy estate.

An order shall be entered denying the Trustee's motion for an order approving the rejection of executory contracts.