In re REVCO D.S., INC., et al., Debtors.

Bankruptcy Nos. 588–1308 to 588–1321, 588–1305, 588–1761 to 588–1812 and 588–1820.

United States Bankruptcy Court, N.D. Ohio.

Aug. 24, 1989.

---

John Silas Hopkins, III, Thomas R. Lucchesi, Baker & Hostetler, Cleveland, Ohio, for debtors.

Richard A. Moses, Gen. Counsel, Town Development, Inc., Pittsburgh, Pa., for movant.

Stuart E. Hertzberg, Pepper, Hamilton & Scheetz, Detroit, Mich., for Trade Creditors' Committee.

Conrad Morgenstern, Cleveland, Ohio, U.S. Trustee.

Brad Eric Scheler, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Unsecured Noteholders' Committee.

Robert J. White, O'Melveny & Myers, Los Angeles, Cal., for Unofficial Committee of Secured Bank Lenders.

Richard Lieb, William J. Rochelle, Kronish, Lieb, Weiner & Hellman, New York City, for Unofficial Preferred Equity Committee.

Frederick M. Luper, Luper, Wolinetz, Sheriff & Niedenthal, Columbus, Ohio, for Odd Lot Trading, Inc. Creditors Committee.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION FOR RELIEF FROM STAY OF TOWN DEVELOPMENT, INC.

HAROLD F. WHITE, Bankruptcy Judge.

The "Motion for Relief from Stay" (Relief from Stay Docket (Docket) Y–1) filed by Town Development, Inc. (Movant) came before the Court for hearing on May 23, 1989. Due notice of said hearing was given. Present at the hearing were Richard A. Moses, counsel for Movant and Thomas R. Lucchesi counsel for Debtors (Revco). Counsel presented arguments to the Court and requested additional time to submit briefs on the matters at issue. Based upon the arguments of counsel and a review of the motion and post-hearing briefs this Court makes the following Findings of Fact.

Findings of Fact

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and General Order of Reference 84 of the Northern District of Ohio. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

2. On July 26 and 28, and October 4 and 5, 1988 Revco D.S., Inc. and substantially all of its operating subsidiaries, filed separate chapter 11 petitions pursuant to Section 301 of the Bankruptcy Code. Revco thereupon continued in the management and operation of its businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

3. Revco is engaged in the operation of approximately 1,900 retail drug stores throughout the United States.

4. On September 22, 1988 after notice and a hearing on the matter, this Court entered an order pursuant to 11 U.S.C. § 365(d)(4) extending the time within which Revco must elect to assume or reject nonresidential real property leases until the time of plan confirmation. (Case Docket No. 231).

5. Movant is lessor of Revco Store No. 353 located at the Lorain Plaza Shopping Center in Lorain, Ohio. Movant and Revco entered into a lease (the "Lease") for said premises for an original term of 10 years. The term of the Lease expires on August 31, 1989.

6. The Lease includes an option to renew the Lease for an additional five-year term provided that Revco notify Movant of

any intent to renew within nine months prior to the expiration date. *Lease,* p. 3.

7. The Option To Renew section of the lease states

"Lessee's notification to exercise said option shall be of no force and effect and shall be a nullity if Lessee is in default of any of the terms, conditions and covenants of this Lease on the date Lessee notifies Lessor of its intention to exercise said option or on the date said five (5) year renewal term is to commence." *Lease,* p. 3.

8. By letter dated November 23, 1988 Revco timely notified Movant of its intention to exercise the option to renew the Lease for an additional five year term (the "Renewal Notice"). *Tr.* p. 16, *Brief in Support of Motion,* Exhibit B. Movant received the Renewal Notice on November 29, 1988.

9. By letters dated April 21, 1988 through November 21, 1988 Movant notified Revco that its rent was past due. *Brief in Support of Motion,* Exhibits C1–C5.

10. By letter dated December 1, 1988 Movant notified Revco that it considered the Renewal Notice of no force and effect as Revco was in default of the Lease on the date the Renewal Notice was received by Movant. *Brief in Support of Motion,* Exhibit D.

11. On January 12, 1989 Revco informed Movant by letter that it had validly exercised its option to renew the Lease and intends to occupy the premises for the additional five-year term. *Brief in Support of Motion,* Exhibit E.

12. The unpaid rent at present and at the time Movant received the Renewal Notice is $10,500.76. *Tr.* p. 17. The parties agree that of the $10,500.76 amount due $166.66 for Merchant's Association Charges and $1,368.82 for unpaid common area charges are prepetition debts. *Tr.* pp. 18–19. The balance of the amount owed Movant, $8,965.28 represents percentage rent due.

13. The parties disagree on the classification of the percentage rent due. Revco has paid Movant $950.86, the amount of percentage rent it determines is attributable to the postpetition period. *Tr.* p. 39. Movant contends all percentage rent is a postpetition expense as the due date for payment occurs postpetition.

14. The Lease provides for monthly minimum rental payments (Minimum Rent) of $4,700 as well as percentage rent in excess of a designated Sales Base amount of $1,800,000.00. The Lease provides that percentage rent shall be paid to Movant "within sixty 60 days after the end of each lease year ..." *Lease,* pp. 3–5. The Lease year ran from September 1 through August 31.

15. At present Revco has neither assumed nor rejected the Lease.

16. Revco has timely paid all postpetition Minimum Rent. *Tr.* p. 37.

ISSUE 1

When a lease for retail shopping center space provides for payment of percentage rent as a percentage of gross sales in excess of a stated amount of sales and payment is due once a year and the due date occurs postpetition is the total amount of percentage rent due a postpetition expense?

Movant contends that the entire amount of percentage rent is a postpetition expense as the contractual due date for payment occurred after Revco filed its chapter 11 petitions. Movant further argues that there is no precedent or rationale for prorating percentage rent in the instant matter.

Revco argues that all postpetition payments have been paid currently and it has properly prorated the percentage rent relating to the postpetition portion of the Lease term. In determining the postpetition percentage rent Revco multiplied the total amount of percentage rent for the Lease year ending 8/31/88 ($9,916.15) by the ratio of postpetition days to total calendar year days (35/365) which resulted in $950.86 of postpetition percentage rent.

The Court rejects both of the arguments of Movant and Revco in calculating postpetition percentage rent.

It is the Conclusion of the Court that percentage rent accruing from the petition date through the end of the 1988 Lease year should be paid to Movant as postpetition percentage rent.

Revco erroneously relies on a recent decision of this Court for support for its method of proration. In the *Findings of Fact and Discussion of Law on Motion of Lincoln Property Company XXVI, Ltd.* (Docket No. 1031) this Court rejected Revco's method of proration of percentage rent (the same method as in the instant matter) and held that payment on a quarterly basis in accord with the terms of the Lease was proper. *Findings*, at 14.

The "Percentage Rent" provision of the Lease provides that Lessee agrees to pay Lessor 2½% of annual gross receipts in excess of the Sales Base of $1,800,000.00 *Lease*, p. 4.

Pursuant to the "Percentage Rent" provision of the Lease Revco agrees to maintain "books and records in accordance with generally accepted accounting practice in which shall be recorded gross receipts" *Lease*, p. 5. Revco has the ability to review its records and determine when gross receipts at the subject store reached the Sales Base of $1,800,000.00 and percentage rent began to accrue.

With this information Revco and Movant can determine what amount of percentage rent accrued after the petition date. All percentage rent earned from the beginning of the bankruptcy administration to the end of the Lease year should be paid as it is a postpetition expense of the Debtors' estate. Payment in this manner is in accord with the terms of the lease, section 365(d)(3) of the Bankruptcy code and case law. *See, Straus–Duparquet, Inc. v. Local Union No. 3 International Brotherhood of Electrical Workers, (In re Straus–Duparquet, Inc.)* 386 F.2d 649, 651 (2nd Cir.1967).

### ISSUE 2

Can Revco, while in default to Movant for prepetition percentage rent, exercise its option to renew the Lease (when the Lease prohibits renewal if Lessee is in default) without assuming the Lease?

Movant argues that Revco owed it prepetition percentage rent at the time it exercised the renewal option, and since this was a default under the Lease, the renewal was void. Movant also asserts Revco's reliance on the "ipso facto" provision of section 365(e)(1) is misplaced as Revco could have chosen to assume the Lease and cure all defaults prior to exercising the renewal option. Movant further asserts that Revco may not extend the Lease without first assuming the Lease. Movant relies on *Glimcher v. Washington Distributors, Inc. (In re Cook United, Inc.)*, 53 B.R. 342 (Bankr.N.D.Ohio 1985) for its position.

Revco contends that it is not required to assume the Lease as a condition precedent to the exercise of the option and relies on *In re Webster Clothes, Inc.*, 36 B.R. 260 (Bankr.D.Md.1984). Revco further contends that the "ipso facto clause" of the Bankruptcy Code prohibits parties from terminating contracts or leases solely as a result of bankruptcy and Movant cannot rely on the prepetition percentage rent "default" as a basis to void the renewal option.

A review of case law on this matter establishes that debtor may exercise an option to renew a lease without assuming the lease if the lessor has not requested the Court to order debtor to assume or reject within a specified period of time.

In *Glimcher v. Washington Distributors, Inc. (In re Cook United, Inc.)*, 53 B.R. 342 (Bankr.N.D.Ohio 1985) a lessor filed an application for an order requiring debtor to assume or reject leases within a specified time. The leases provided for an option to renew so long as the lessee was not in default of any lease terms. Prepetition percentage rent was outstanding at the time of the filing of the application. Without having assumed the leases, debtor notified lessor by letter that it was exercising its options to renew the leases while reserving its right to assume or reject the leases at a later date.

Judge Ray stated on page 345, "Where the lessor has requested assumption or rejection, Debtor must assume before it may exercise an option to renew."

Judge Ray noted that debtor could have filed a motion to assume the leases and to cure the defaults, but it failed to do so. Lessor clearly stated in his application that the leases must be assumed prior to the exercise to renew. The Court further explained on page 345:

The right to cure any defaults that may have given rise to a right to terminate the lease arises under 11 U.S.C. Section 365, and operates even though a grace period to cure defaults under the lease has expired. *Id.* The reason for this rule is that the federal policy to allow the debtor time to decide whether or not it will promptly cure a default outweighs state law contract provisions to the contrary. *See Id.* and *Webster, supra,* at 264. However, this right is limited by the lessor's right to an order compelling the debtor to assume or reject the lease. 11 U.S.C. Section 365(d) (1978). Once the lessor exercises his right to demand assumption, the debtor is no longer free to cure defaults at will until confirmation of the plan. [citing *Executive Square Office Bldg. v. O'Connor,* 19 B.R. 143, 146 (Bankr.N.D.Fla. 1981).]

. . . . .

Once a request is made by the lessor to assume or reject, federal policy no longer overrides the contract, and the lease terms retain their original effect. Thus once Glimcher filed for an order to assume or reject, Debtor had to assume and cure all defaults before it could exercise the option to renew.

In the case of *In re Webster Clothes, Inc.,* 36 B.R. 260 (Bankr.D.Md.1984) the debtor filed an application for authority to assume an unexpired lease. At the time of the filing debtor owed lessor prepetition percentage rent. The lease contained a renewal provision that could be exercised only if tenant was not in default. Debtor notified lessor of its intention to exercise the renewal option but landlord refused to acknowledge the renewal until assumption and payment of the default occurred.

The Court concluded that debtor effectively exercised the renewal option. *Id.* at

264. The Court found the prepetition percentage rent was a minor default and stated "this Court is loathe to enforce a forfeiture of the Option on the basis of a minor default." *Id.* The Court ordered debtor to cure the default upon authorization of assumption of the lease.

As to the validity of exercising the renewal option while in default of the lease the Court stated on page 264:

Having failed to avail itself of the statutory procedure for securing an earlier assumption or rejection of the lease, Forbes–Cohen will not be heard to complain that Webster had not assumed the lease at the time it exercised the Option.

*See, also In re Tirenational Corp.,* 47 B.R. 647, 651 (Bankr.N.D.Ohio 1985) (nondebtor is able to protect its position by filing with the Court, during the pre-confirmation period, an application to have the debtor accept or reject the contract).

In the instant matter Movant failed to avail itself of the statutory procedure to compel an early assumption or rejection of the Lease. By letter dated November 23, 1988 Revco timely notified Movant of its intention to exercise the option to renew the Lease. (Finding No. 8) Movant promptly notified Revco that it considered the renewal of no force and effect as Revco was in default of the Lease. (Finding No. 10) Movant had ample time to act but did not file a motion to compel assumption or rejection of the Lease. Based upon the authority cited earlier this Court concludes that Revco may exercise its right to renew the Lease without assuming the Lease and curing the prepetition percentage rent. Movant failed to seek an order from this Court to compel Revco to assume or reject the Lease therefore Movant cannot raise the issue of failure to assume prior to exercising the renewal option at this time. *Accord, In re Webster Clothes, Inc.,* 36 B.R. 260 (Bankr.D.Md.1984).

### Conclusions of Law

Therefore it is the Conclusion of this Court that the Motion for Relief from Stay should be denied. The option to renew the Lease exercised by Revco is valid and said

Lease will not expire on August 31, 1989 but is renewed for an additional five year term.

Revco shall recalculate percentage rent in accordance with these Findings and Conclusions and pay any additional amount calculated to Movant immediately.

A separate Order will be entered in accordance with these Findings of Fact and Conclusions of Law.